<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                        :
BRIAN M. BEEBE,                         :
                                        :   Civil Action No. 14-1385 (RMB)
            Plaintiff,                  :
                                        :
      v.                                :          <u>OPINION</u>
                                        :
WALTER A. SCHULTZ, ESQ.,                :
                                        :
            Defendant.                  :
_____ :

**BUMB, District Judge:**

　　This matter comes before the Court upon Plaintiff's submission of a § 1983 complaint ("Complaint") and an application to proceed in this matter <u>in forma pauperis</u>.[1]  <u>See</u> Docket Entries Nos. 1 and 1-1.  Based on his affidavit of indigence, the Court will grant Plaintiff <u>in forma pauperis</u> status, pursuant to 28 U.S.C. § 1915(a), and will order the Clerk to file the Complaint.

---

[1]　Plaintiff's pleadings were written on an outdated civil complaint form stating that the filing fee for a civil suit is $120.  <u>See</u> Docket Entry No. 1, at 2.  Currently, the filing fee associated with commencement of a civil matter is $350.  The civil filing fee increased from $120 to $150 effective November 1, 1997, then increased from $150 to $250, effective March 7, 2005, and finally increased from $ 250 to $ 350, effective April 9, 2006.  Plaintiff's willingness to assume the financial responsibility associated with initiation of this matter under the currently existing law (and current $350 filing fee) ensues from the very fact of Plaintiff's commencement of this matter.  <u>See</u> 28 U.S.C. § 1915(b)(1); <u>see also</u> <u>Hairston v. Gronolsky</u>, 348 F. App'x 716 (3d Cir. Oct. 15, 2009) (a litigant's willingness or unwillingness regardless, his/her "legal obligation to pay the filing fee [is] incurred by the initiation of the action itself") (citing <u>Hall v. Stone</u>, 170 F.3d 706, 707 (7th Cir. 1999)).

At this juncture, the Court must screen the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, or for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from an immune defendant.

Here, Plaintiff's Complaint warrants dismissal with prejudice.  However, a brief review of the state court system is needed to understand Plaintiff's challenges that build on his eventually-aborted "drug court" proceeding and ethics grievance.

New Jersey "drug courts" are a chapter of the New Jersey Superior Court that holds criminal proceedings for certain types of offenders.[2]  See Manual for Operation of Adult Drug Court is New Jersey, at 1, http://www.state.nj.us/defender/ManuaforOperationofDrugCourts.pdf ("Drug Courts are a highly specialized team process that function within the existing Superior Court structure of address

---

[2]
Drug courts began in New Jersey in 1996 when Camden and Essex Superior Courts started [their] pilot program efforts.  . . .  [I]n June [2000,] the Judicial Council adopted drug courts as a "best practice" and called for a comprehensive statewide proposal. . . .   On Sept. 6, 2001, Legislation L.2001, c.243 was signed by the Governor [and yielded] a statewide drug court system [for] substance-abusing criminal offenders who are charged with non-violent offenses and who do not have prior convictions for violent crimes.

Adult Drug Court Programs, http://www.judiciary.state.nj.us/drug court/index.htm.

nonviolent drug-related cases"). The "drug court" system differs from the State's traditional criminal court system only in the scope of its operations since it allows those offenders who pass the required screening to enter guilty pleas in exchange for favorable sentences that include, but are not limited to, a drug-addiction treatment and a probation period that encompasses certain reporting and monitoring requirements, residential treatment program, and community work. See id. at 9. Since "drug courts" are state courts in each and every respect, all participants of the "drug court" proceedings have their firmly allocated roles. Consequently, the prosecutors participating in the "drug court" proceedings act as advocates of the State. See id. at 31.

Here, the Complaint indicates that, prior to June 2013, Plaintiff, who suffers from a controlled-substance and/or alcohol addiction, committed a burglary and was criminally charged on the basis of that offense. See Docket Entry No. 1, at 4. Initially, he was offered to plead guilty to a felony charge and face a sentence exceeding 364 days. See id.

However, in June 2013, he was screened and approved for participation in the "drug court" program, and Defendant, a State prosecutor, was appointed to represent the State in that specialized proceeding. See Docket Entry No. 1, at 4. As part of Plaintiff's plea deal under the auspices of the "drug court"

3

program, Plaintiff was offered a far more favorable plea involving a misdemeanor charge and a jail term of 364 days. See id. Yet, about six months into his "drug court" proceeding, Plaintiff: (a) elected to opt out of the "drug court" program in favor of a regular criminal prosecution; and (b) made an appropriate application to his presiding "drug court" judge. See id. Upon learning of Plaintiff's application, Defendant advocated before that judge that Plaintiff should not have been allowed to withdraw from the "drug court" proceeding. See id. The judge, however, granted Plaintiff's application.[3] At that, Plaintiff's "drug court" proceeding and misdemeanor plea offer automatically terminated, and his "regular" criminal proceeding was automatically re-triggered. See id. Although, during that "regular" proceeding, Plaintiff's counsel tried to negotiate a misdemeanor deal similar to the one offered under the auspices of the "drug court" program, those attempts proved unsuccessful, and the "regular" plea offer involving the original felony charge and a sentence exceeding 364 days remained.[4] See id.

---

[3] Plaintiff asserted that Defendant uttered, while leaving the withdrawal hearing, "All [Plaintiff] wants to do is go out and commit more burglaries." Docket Entry No. 1, at 3.

[4] While another prosecutor was representing the State during that "regular" criminal proceeding, Plaintiff maintains that Defendant attended the courtroom while that proceeding was in the process of being adjudicated. The Complaint is ambiguous as to whether Defendant acted as a stand-by counsel or assistant counsel, or attended the proceeding in the audience. See Docket Entry No. 1, at 4.

These events prompted Plaintiff to conclude that Defendant must have violated his rights. Plaintiff submitted a state disciplinary grievance against Defendant for filing with the District I Ethics Committee.[5] See Docket Entry No. 1-1, at 6. About two weeks after submitting that grievance, Plaintiff submitted his instant Complaint seeking six forms of relief. See id. at 5.

Specifically, he requested this Court to: (a) reprimand Defendant; (b) grant Plaintiff compensatory damages for the emotional distress he allegedly suffered; (c) grant Plaintiff compensatory damages for the incarceration time equal to the difference between his felony sentence and the withdrawn 364-day misdemeanor plea offer; (d) grant Plaintiff compensatory damages for the conditions of confinement he might experience in a community correctional center; (e) issue a standing order barring withdrawal of offered pleas to other individuals who might elect

---

[5] At the state level, attorney discipline is administered by the Office of Attorney Ethics ("OAE"), a "prosecutorial arm of the Supreme Court of New Jersey [that] manages 18 district ethics committees." See http://www.judiciary.state.nj.us/oae/index.htm. "The attorney disciplinary process is usually begun by the filing of an Attorney Grievance form with the Secretary of one of the . . . district ethics committees." Id. New Jersey Court Rules provide, in pertinent part, that, "[i]f a grievance alleges facts that, if true, would constitute unethical conduct and if those facts are substantially similar to the material allegations of pending . . . criminal litigation, the grievance shall be docketed and investigated . . . . All other grievances involving such related pending . . . criminal litigation may be declined and not docketed." N.J. Ct. R. 1:20-3(f).

to opt out of the "drug court" process; and (f) grant Plaintiff attorney's fees in connection with the instant matter.  <u>See</u> <u>id.</u>

    The complaint fails to state a cognizable claim.  To the extent Plaintiff seeks damages from Defendant, Defendant is immune.  Prosecutors are absolutely immune from actions under § 1983 for "initiating and pursuing a criminal prosecution."  <u>Kalina v. Fletcher</u>, 522 U.S. 118, 123 (1997) (quoting <u>Imbler v. Pachtman</u>, 424 U.S. 409, 410 (1976)).  Thus, "a state prosecuting attorney who act[s] within the scope of his duties initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983.  <u>Imbler</u>, 424 U.S. at 410.  Thus, a prosecutor's appearances/statements made in court or applications for favorable-to-the-State decisions, or briefs advocating the State's position are protected by absolute immunity.  <u>See</u> <u>Burns v. Reed</u>, 500 U.S. 478, 492 (1991).  Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993).

    Plaintiff asserts that Defendant objected to Plaintiff's application to opt out of the "drug court" program, made an utterance expressing Defendant's opinion as to Plaintiff's criminal propensity and withdrew the misdemeanor plea offer upon

termination of Plaintiff's "drug court" proceeding.  All these actions were undertaken in Defendant's capacity as an advocate for the State.  Therefore, Defendant is absolutely immune from Plaintiff's suit.[6]

To the extent Plaintiff requests this Court to reprimand Defendant, Petitioner's disciplinary grievance seeking reprimand of Defendant is properly before the OAE and will be addressed accordingly.[7]

To the extent Plaintiff seeks damages on the basis of the length of his current confinement that ensued from the sentence imposed as a result of his "regular" proceeding (or the plea deal obtained in that proceeding, or the sentence he is about to receive as a result of his "regular" proceeding or a plea deal he would obtain), this claim is premature.  See Heck v. Humphrey, 512 U.S. 477 (1994).

---

[6] Even assuming Defendant made derogatory comments, Defendant's lack of etiquette is not a constitutional violation. See King v. Lienemann, 2011 U.S. Dist. LEXIS 21968, at *16 (S.D. Ill. Mar. 4, 2011) ("[T]he Constitution is not a manual of etiquette, nor is the Court an arbiter of good taste").  And, since Plaintiff had no right to any plea offer, moreover, to a "more favorable" plea offer, Plaintiff rights could not have been violated when he was unable to secure the same misdemeanor deal during his "regular" proceeding.  See United States v. Osif, 789 F.2d 1404, 1405 (9th Cir. 1986) ("a defendant does not have a constitutional right to a plea bargain").

[7] The state court attorney ethics system envisions "several forms of discipline: admonition, reprimand and censure . . . ; suspension . . . and disbarment."  http://www.judiciary.state.nj.us/drb.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Id. at 486-87 (footnote omitted).

Here, nothing in the Complaint suggests that Plaintiff's sentence was overturned or reduced by a state court order or by a federal habeas writ.  Therefore, this claim should be dismissed without prejudice to being raised in a new and separate civil matter when and if it ripens.  All remaining claims should be dismissed, as facially meritless.[8]

---

[8] To the extent Plaintiff asserts his displeasure with the conditions of confinement he might face when he is transferred to a community correctional center, that displeasure cannot amount to a viable challenge being: (a) wholly speculative; (b) causally unrelated to Defendant; and (c) failing to meet the Eighth Amendment standard.  Thus, this claim will be dismissed without prejudice to being raised against an appropriate defendant in the event that claim ripens.  To the extent Plaintiff seeks this Court's standing order barring withdrawal of pleas from other pre-trial detainees who might elect to opt out of the "drug court" program, this application will be denied with prejudice because this Court has no mandate to interfere in state processes, these other pre-trial detainees have no constitutional right to plea bargain, and Plaintiff has no standing to raise challenges on behalf of these other pre-trial detainees.  To the extent Plaintiff seeks attorney's fee in connection with this matter, Plaintiff's application is denied because Plaintiff is proceeding pro se.  Therefore, it will be denied with prejudice.

If anything, Plaintiff's allegations verify that they cannot be cured by re-pleading.  See Foman v. Davis, 371 U.S. 178, 182 (1962).  Therefore, his Complaint will be dismissed.

An appropriate Order follows.

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**

Dated: May 27, 2014